**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **X.R.**

**No. 21-0193** (Randolph County 20-JA-61)

**MEMORANDUM DECISION**

Petitioner Mother H.W., by counsel G. Phillip Davis, appeals the Circuit Court of Randolph County's February 16, 2021, order terminating her parental rights to X.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period or imposing a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner abused methamphetamine while pregnant with X.R. Petitioner was incarcerated and was serving a sentence for her conviction of third-offense shoplifting at the time of the child's birth. Per the DHHR, X.R. was born drug-exposed and remained at the hospital for two months for detoxification. The DHHR noted that petitioner's parental rights to two biological children and two stepchildren were involuntarily terminated in a prior proceeding in 2016. According to the DHHR, the prior case also concerned petitioner's substance abuse and petitioner had not experienced a change in circumstances since the disposition in the 2016 case. Instead, petitioner's circumstances had greatly declined since the 2016 proceeding. The DHHR concluded that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

aggravated circumstances existed due to petitioner's prior involuntary terminations of her parental rights.

The circuit court held an adjudicatory hearing in September of 2020, and petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusive and neglectful parent. In November of 2020, the DHHR filed a motion to terminate petitioner's parental rights. A few days later, petitioner filed a motion for a post-adjudicatory improvement period. The same month, the circuit court held a status hearing and continued disposition in light of petitioner's release to a sober living facility while on parole.

In January of 2021, the circuit court held a final dispositional hearing at which time it considered petitioner's motion for a post-adjudicatory improvement period and the DHHR's motion to terminate parental rights. The DHHR presented the testimony of the caseworker, who testified that petitioner's prior proceeding in 2016 was due to her substance abuse and petitioner's parental rights were involuntary terminated due to her failure to participate in her case plan and substance abuse treatment. The caseworker commended petitioner for making some progress during the two months she had been on parole, but ultimately recommended termination of her parental rights based upon the child's need for permanency and petitioner's inability to correct the conditions of abuse and neglect in the near future. According to the caseworker, by the time petitioner could potentially complete her sober living program in May of 2021, X.R. would have been in the DHHR's custody for more than fourteen months. She explained that if petitioner completed the sober living program, she would need to demonstrate at least six months of sobriety prior to reunification with the child, due to her long history of chronic substance abuse. Therefore, the caseworker concluded that the statutory timeframes for permanency of the child would not be met if petitioner were granted an improvement period.

Petitioner testified that she was first incarcerated in the regional jail around May of 2019, during which she was released to receive substance abuse treatment. However, petitioner was removed from the program for sharing substances with another participant and reincarcerated at Lakin Correctional Facility on July 13, 2019. Petitioner stated that she was paroled on November 5, 2020, having been incarcerated for more than eighteen months. As a condition of parole, petitioner enrolled into a sober living program with a completion date of May of 2021. Petitioner stated that she would comply with an improvement period if she were granted one and that she had been sober since her incarceration of July of 2019. Petitioner stated that through the sober living program, she attended narcotics anonymous classes, participated in adult life skills sessions, attended individual and group therapy, worked fulltime, and regularly submitted negative drug screens. Petitioner presented the testimony of Shonda Pence, the owner of the sober living facility, who confirmed petitioner's participation in the program. On cross-examination, petitioner testified that she had done nothing to address her substance abuse between the time of the 2016 proceeding and her incarceration in July of 2019, at which time she was ten-weeks pregnant with X.R. She also conceded that her substance abuse led to her felony shoplifting conviction.

The circuit court found that it was undisputed that petitioner's parental rights had been previously involuntarily terminated and that the underlying petition was filed due to aggravated circumstances. The court found that petitioner's substance abuse had been a significant issue in

2

both the prior case and the instant case, which resulted in X.R. being born drug-exposed and undergoing detoxification for the first two months of her life. The circuit court further found that petitioner had not had contact with the child since birth and had no bond with her. The circuit court noted that petitioner was sentenced to one to ten years of incarceration following her conviction of third-offense shoplifting and had been drug-free for approximately eighteen months due to incarceration and a structured environment such as the sober living facility—a condition of her parole. The circuit court noted that although petitioner had made some positive changes in recent months to address her substance abuse, she had not corrected the conditions of abuse and neglect and would not be able to do so in the near future. The circuit court denied petitioner's motion for an improvement period and terminated her parental rights, finding that termination was necessary for the child's welfare. It is from the February 16, 2021, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, she remedied the conditions of abuse and neglect that led to the petition's filing and she testified that she would comply with the terms and conditions of an improvement period. In support, petitioner contends that she attended all hearings and all multidisciplinary team meetings, enrolled into a sober living facility once she was paroled, and maintained sobriety and employment. Petitioner argues that she participated in services while incarcerated by taking classes and continued to participate in services while enrolled in the sober living facility. As such, petitioner argues that she was likely to fully participate in an improvement period.

Pursuant to West Virginia Code § 49-4-604(c)(7)(C), the DHHR was not "required to make reasonable efforts to preserve the family" because "the parental rights of [petitioner] to another child [had] been terminated involuntarily." Therefore, the DHHR was justified in not affording petitioner services throughout the proceedings. However, petitioner's prior termination of her

---

[2]X.R.'s paternity is unknown and proceedings regarding the father remain ongoing. The permanency plan for the child is adoption by the maternal aunt.

parental rights was not dispositive as to an improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004).

Here, petitioner fails to demonstrate that she was entitled to an improvement period. Most importantly, petitioner's argument for a post-adjudicatory improvement period wholly disregards the child's best interest as well as the statutory timeframes for child abuse and neglect matters.

> Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

W. Va. Code § 49-4-610(9). According to the record, X.R. had been in the DHHR's custody and foster placement for ten months by the dispositional hearing. Therefore, a post-adjudicatory improvement period would have caused the child to remain in foster placement for more than fifteen months and her permanency would be delayed beyond the statutory limits.

While it is true that petitioner made positive changes in the two months prior to the dispositional hearing, the record is clear that petitioner has a significant history of drug abuse, that she was offered improvement periods during prior proceedings, and that she failed to comply with services or remedy the conditions of abuse, leading to the termination of her parental rights to older children. Additionally, the evidence established that petitioner failed to attend drug treatment following the termination of her parental rights to her older children and enrolled into a sober living facility as part of her parole requirements. This Court has previously held that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). In light of petitioner's past performance, we find no compelling circumstances existed to justify an extension of the statutory time limits and further find that the circuit court did not abuse its discretion in denying petitioner's motion for an improvement period

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help." Moreover, "the legislature has reduced the minimum

threshold of evidence necessary for termination where" the parent's parental rights to another child have been terminated involuntarily. *In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (citation omitted); *see also* W. Va. Code § 49-4-605(a) (outlining factors under which the DHHR must seek termination of a parent's parental rights).

The evidence supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner did not successfully complete improvement periods during a prior proceeding, resulting in the termination of her parental rights to two older children and two stepchildren. Following the prior proceeding, petitioner was sentenced to incarceration for third-offense shoplifting, which petitioner admitted was related to her drug addiction, and she remained incarcerated for eight months of the underlying proceedings. While petitioner claims that she has not abused drugs since July of 2019, the circuit court found that her sobriety was a result of her incarceration and structured parole environment. Accordingly, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help and, given the reduced threshold of evidence necessary for termination in this case, we find no error in the circuit court terminating petitioner's parental rights to the child.

According to petitioner, the court should have imposed a less-restrictive alternative to termination, but she ignores the following direction:

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Again, because the court made the requisite findings, a less-restrictive alternative to termination was not appropriate.

Further, because the proceedings regarding the unknown father remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Additionally, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton